UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TOMMY A. SULLIVAN, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:14-cv-00470-TAB-RLY |
| CAROLYN W. COLVIN Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I. Introduction**

Plaintiff Tommy A. Sullivan appeals the Commissioner's denial of his Social Security application for a period of disability, disability insurance benefits, and supplemental security income. Sullivan asserts: (1) the ALJ erroneously determined that Sullivan did not meet or equal listings 12.05B or 12.05C; (2) the ALJ's failure to summon a medical advisor was in error; (3) the ALJ's credibility determination was patently wrong; and (4) the ALJ erred in concluding that Sullivan was capable of performing work in the national economy. For the reasons set forth below, Plaintiff's brief in support of appeal [Filing No. 14] is denied and the Commissioner's decision is affirmed.

**II. Discussion**

*A.    Standard of Review*

Under 42 U.S.C. § 405(g), the Commissioner's factual findings must be upheld if substantial evidence supports his findings. The Seventh Circuit defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). The ALJ is obligated to consider all

relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ, however, need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

    B.    *Combination of impairments*

Sullivan asserts that substantial evidence does not support the ALJ's conclusion that Sullivan did not meet or equal listings 12.05B and 12.05C. Sullivan contends that the combination of his verbal I.Q. score, full scale I.Q. score, special education, and chronic back-leg pain meet or equal these listings and warrant a finding of disability. Listing 12.05 covers intellectual disability and "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Under listing 12.05B, a claimant meets a listing if he has a valid verbal, performance, or full scale I.Q. of 59 or less. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B. A claimant meets listing 12.05C when he has "a valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

Sullivan scored a verbal I.Q. of 58 and a full scale I.Q. score of 67, which meets the requirements of listing 12.05. The ALJ acknowledged that fact. [Filing No. 12-2, at ECF p. 17.] However, the ALJ found these scores were invalid. Relying on Dr. Greg Lynch's consultative assessment, the ALJ found that Sullivan's I.Q. tests did not satisfy the listing because Dr. Lynch

reported that these scores were an underestimate of Sullivan's actual abilities, which he estimated in the borderline range. Dr. Lynch also concluded that Sullivan's adaptive behavioral functioning was not deficient. [Filing No. 12-7, at ECF p. 18.] Sullivan rightly asserts that Dr. Lynch did not specifically state that the I.Q. tests were invalid. However, the Court disagrees with Sullivan's conclusion that remand is necessary.

Substantial evidence supports the ALJ's finding that the I.Q. tests were invalid. *Maggard v. Astrue*, 167 F.3d 376, 379-81 (7th Cir. 1999). The ALJ accounted for Dr. Lynch's conclusion that the tests underestimated Sullivan's ability. Likewise, the ALJ acknowledged Dr. Lynch's report that Sullivan gave poor effort on his I.Q. tests. He was unwilling to guess on the verbal items and seemed to give up easily without giving adequate consideration. [Filing No. 12-7, at ECF p. 17.] Sullivan's employer's report also supported the ALJ's decision. Sullivan's employer noted that Sullivan worked many years as a skilled, reliable employee and was considered a quick learner that worked well with others. Sullivan's employer also believed Sullivan conducted himself in a professional manner, all of which the ALJ determined showed that Sullivan had good adaptive functioning skills. [Filing No. 12-6, at ECF p. 13-15.] Indeed, Sullivan's employer noted that Sullivan's poor attendance resulted in his termination, not his intellectual functioning. [Filing No. 12-6, at ECF p. 13-14.]

The ALJ further considered the fact that Sullivan did not attend any special education classes as evidence to support a finding that Sullivan's I.Q. tests were invalid. This reasoning was erroneous as the evidence includes two months of special education. [Filing No. 12-6, at ECF p. 52.] Even so, this error does not negate the fact that overwhelming evidence in the record supports the ALJ's conclusion that Sullivan's scores were invalid and thus, Sullivan did

not meet a listing.[1]  See *Brazitis v. Astrue*, No. 11-c-7993, 2013 WL 140893, at *11 (N.D. Ill. Jan. 11, 2013) ("In some cases, the Seventh Circuit has affirmed the ALJ's decision despite the presence of flaws in reasoning when the ALJ's other reasons are valid.").

Sullivan also contends that the ALJ failed to specifically list listings 12.05B and 12.05C in his decision, which is reversible error.  Sullivan cites to *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) to support this assertion.  However, *Ribaudo* is distinguishable.  In *Ribaudo*, the ALJ failed to mention the relevant listing and did not evaluate any of the evidence to the listing's criteria.  *Id.*  Here, the ALJ discussed relevant evidence and evaluated the required criteria under listing 12.05.  Thus, the ALJ's failure to specifically list listings 12.05B and 12.05C does not justify remand.

    C.    *Failure to summon a medical advisor*

Sullivan contends that the ALJ's failure to summon a psychologist to determine whether Sullivan's combination of impairments equaled a listing was in error.  According to Sullivan, the ALJ cited no evidence to support his medical equivalence determination, and therefore, the decision must be remanded.  The decision on whether to summon a medical advisor is one of discretion.  An ALJ should summon a medical advisor if he lacks sufficient information to adequately develop the record.  *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).

Here, the ALJ adequately developed the record.  Sullivan argues that the ALJ used his own layperson opinion in determining that Sullivan did not meet or equal a listing.  However, reading the ALJ's step-three finding as a whole, the Court finds that the ALJ relied on medical

---

[1] Because substantial evidence supports the ALJ's finding that Sullivan did not satisfy listing 12.05B or the first prong of listing 12.05C, the Court need not address whether Sullivan possessed a physical or other mental impairment imposing additional and significant work-related limitation of function so as to satisfy the second prong of listing 12.05C.  See *Maggard v. Apfel*, 167 F.3d 376, 379-81 (7th Cir. 1999).

4

evidence to support his finding. In arriving at this decision, the ALJ reviewed Sullivan's psychological examination noting Sullivan's moderate difficulties in concentration, persistence, and pace, his mild restrictions in daily living and social functioning, and no episodes of decompensation. [Filing No. 12-7, at ECF p. 15-19.] The ALJ acknowledged Sullivan's borderline intellectual functioning and relied on the consultative examination in determining that Sullivan's I.Q. tests were invalid. [Filing No. 12-7, at ECF p. 18.] The ALJ considered Sullivan's physical limitations, finding that the medical evidence did not establish nerve root compromise. Moreover, the ALJ considered the state agency consultant's report that found no limitations in Sullivan's ability to ambulate. [Filing No. 12-7, at ECF p. 7-9.] The ALJ provided adequate information to support his conclusion that Sullivan did not meet or equal a medical listing without summoning a medical advisor, and the Court will not disturb that decision. Remand on this issue is not appropriate.

    D.    *Credibility determination*

Sullivan also takes issue with the ALJ's credibility determination. In particular, Sullivan asserts that the ALJ's credibility determination is contrary to the evidence because the ALJ failed to acknowledge Sullivan's special education history. Instead, the ALJ indicated, "During the psychological consultative examination, the claimant reported that he completed ten years of school while enrolled in specialized classes. However, the claimant's school records do not indicate he attended any special education classes or received educational accommodations." [Filing No. 12-2, at ECF p. 8.] To the contrary, Sullivan's education records reveal that from September 7, 1976, to November 9, 1976, Sullivan attended special education classes. [Filing No. 12-6, at ECF p. 52; Filing No. 12-7 at ECF p. 15.] Because the ALJ failed to consider

5

Sullivan's special education, Sullivan argues that the location, duration, frequency and intensity of his symptoms were not properly considered.

The standard of review used for credibility determinations is extremely deferential to the ALJ. The Court will only overturn an ALJ's credibility determination if it lacks any explanation or support and is thus patently wrong. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013); *Brazitis v. Astrue*, No. 11-c-7993, 2013 WL 140893 (N.D. Ill. Jan. 11, 2013). Sullivan is correct that the ALJ erred in his characterization of Sullivan's special education classes as the evidence shows Sullivan attended special education classes for at least two months. Even so, this is not reversible error. The ALJ did not limit his consideration of Sullivan's borderline intellectual functioning to whether Sullivan attended special education classes. The ALJ also considered Sullivan's testimony that he could not read or write, the psychological consultative examination where Sullivan did not report having difficulty reading or writing, and the field-office interviewer who also reported Sullivan experienced no difficulty in reading or writing. [Filing No. 12-2, at ECF p. 19; Filing No. 12-6, at ECF p. 28, 53; Filing No. 12-7, at ECF p. 15-17.] Likewise, the ALJ considered Sullivan's test results from the psychological consultative examination in which Sullivan was unwilling to guess on verbal items and gave up easily, leading the examiner to conclude that Sullivan's intellectual functioning abilities were underestimated.

The ALJ's credibility determination also considered Sullivan's precipitating and aggravating factors; type dosage, effectiveness, and side effects of medication; treatment and other measures, other than medication, taken for relief of pain or other symptoms; and his activities of daily living. Simply put, the ALJ provided specific reasons for his credibility

finding that were supported by evidence in the record. Porchaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006). The Court will not disturb this finding.

  E. *Jobs in the national economy*

  Sullivan's final issue on appeal relates to the ALJ's step-five determination. Sullivan argues that the ALJ's RFC limiting him to simple, repetitive work failed to account for his borderline intellectual functioning and moderate limitation in concentration, persistence, and pace. Indeed, *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), found that an ALJ was required to orient a vocational expert to the totality of a claimant's limitations, including deficiencies in concentration, persistence, and pace. Simply limiting a claimant to simple, repetitive work accounted for unskilled work but not for deficiencies in concentration, persistence or pace. Failure to incorporate relevant limitations to concentration, persistence, or pace would result in remand, unless one of two exceptions existed: (1) the record showed that the VE independently reviewed the medical record or heard testimony directly addressing the relevant limitations; or (2) the ALJ employed alternative phrasing specifically excluding the tasks that someone with the claimant's limitations would be unable to perform—*i.e.,* a hypothetical restricting the claimant to low-stress work when the claimant has a stress-related limitation. *O'Connor-Spinner,* 627 F.3d at 619.

  The first *O'Conner-Spinner* exception does not apply here as the ALJ posed a series of increasingly restrictive hypotheticals to the VE. Under such circumstances, the Court assumes that the VE is focused on the hypotheticals and not on the record. *Id.*; *Similia v. Astrue,* 573 F.3d 503, 521 (7th Cir. 2009). According to the Commissioner, the second exception applies because the ALJ limited Sullivan to "work involving simple, repetitive tasks, requiring no independent judgment regarding basic work processes; and work goals from day to day should be static and

7

predictable."  The ALJ based this language on the limitations set forth by Dr. Lynch.  [Filing No. 12-2, at ECF p. 6.]  Dr. Lynch's consultative examination reported that Sullivan was only slightly limited in his capacity to understand, remember, and carry out instructions of simple, repetitive tasks.  He also was only slightly limited in his ability to tolerate stress and pressure of day-to-day employment and sustain attention and concentration towards performance of simple, repetitive tasks.  Sullivan was slightly to moderately impaired in his capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting.  [Filing No. 12-7, at ECF p. 18.]

The ALJ's RFC did not limit Sullivan only to simple, repetitive tasks—an error that would warrant reversal under *O'Connor-Spinner*.  Nor did the ALJ merely state that Sullivan exhibited borderline intellectual functioning without accounting for his particular limitations.  *See, e.g*, Kasarsky v. Barnhart, 335 F.3d 539, 544 (7th Cir. 2002) (reversing an RFC that stated that because of borderline intelligence claimant was seriously limited but not precluded from understanding, remembering, and carrying out detailed instructions).  Instead, as the Commissioner aptly explains, the ALJ set forth varied limitations on the kinds of tasks Sullivan could perform, the type of judgment Sullivan could exercise, and the nature and predictability of the work goals Sullivan could perform.  The ALJ's alternative phrasing excluded tasks Sullivan would have been unable to perform.  Thus, the Court finds no reversible error on this issue.

### III.  Conclusion

For these reasons, Plaintiff's brief in support of appeal [Filing No. 14] is denied and the Commissioner's decision affirmed.

Date:  4/27/2015

_____
Tim A. Baker
U.S. Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov